THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID MICHAEL BISHOP and SLIM VENTURES, LLC,<br><br>             Petitioners,<br><br>v.<br><br>UNITED STATES, INTERNAL REVENUE SERVICE, and TIMOTHY BAUER, Internal Revenue Agent (ID #0324589), in his Official Capacity,<br><br>             Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING RESPONDENTS' MOTION TO (1) SUMMARILY DENY PETITIONS TO QUASH IRS SUMMONSES AND (2) ENFORCE THE SUMMONSES AND DENYING PETITIONERS' MOTIONS TO QUASH**<br><br>Case No. 2:22-cv-00340-DBB-DBP<br>Case No. 2:22-cv-00341-DBB-DBP<br>Case No. 2:22-cv-00344-DBB-DBP<br>Case No. 2:22-cv-00345-DBB-DBP<br>Case No. 2:22-cv-00347-DBB-DBP<br>Case No. 2:22-cv-00348-DBB-DBP<br>Case No. 2:22-cv-00351-DBB-DBP<br>Case No. 2:22-cv-00352-DBB-DBP<br><br>District Judge David Barlow |

There are two matters before the court. Petitioners David Michael Bishop ("Mr. Bishop") and Slim Ventures, LLC ("Slim Ventures") (collectively "Petitioners") have filed eight Petitions to Quash IRS Third Party Summons regarding four different financial institutions.[1] Also before the court is Respondents United States, Internal Revenue Service ("IRS"), and Agent Timothy Bauer's ("Agent Bauer") (collectively "Respondents") Motion to (1) Consolidate and Summarily

---

[1] Pet. to Quash Summons ("Pet. to Quash"), ECF No. 2, filed May 20, 2022, *Bishop v. United States*, No. 2:22-cv-00340 (D. Utah 2022). In seven related cases, Petitioners filed nearly identical motions to quash IRS summonses in the District of Utah: *Slim Ventures v. United States*, No. 2:22-cv-00341; *Bishop v. United States*, No. 2:22-cv-00344; *Slim Ventures v. United States*, No. 2:22-cv-00345; *Bishop v. United States*, No. 2:22-cv-00347; *Slim Ventures v. United States*, No. 2:22-cv-00348; *Slim Ventures v. United States*, No. 2:22-cv-00351; and *Bishop v. United States*, No. 2:22-cv-00352. As a result, the court references the petition to quash filed by Mr. Bishop regarding Zions Bancorporation NA in this Memorandum Decision & Order.

Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses.[2] Having considered the briefing and relevant law, the court finds that oral argument is unnecessary.[3] For the following reasons, the court grants Respondents' motion and denies the eight petitions.

## BACKGROUND

Mr. Bishop is the managing director of Slim Ventures,[4] which describes itself as a "dealer in capital assets" that promotes Monetized Installment Sale ("MIS") transactions.[5] A typical installment sale transaction occurs when a seller conveys property to a buyer and transfers the associated title before receiving payment.[6] For example, if title transfer takes place in December but the buyer pays the seller in January, the tax code allows the seller to defer capital gains tax until the next calendar year.[7]

A MIS transaction is different. This type of transaction occurs when a party simultaneously sells an appreciated asset[8] and receives payment while deferring capital gains tax for an extended period of time.[9] As advertised by Slim Ventures, "[a]n owner of highly appreciated assets can sell them and defer 100% of the capital gains tax for up to 30 years while receiving up to 95% of the value in cash."[10] Slim Ventures describes the process as follows: (1)

---

[2] Mot. to (1) Consolidate & Summarily Deny Pets. to Quash IRS Summonses & (2) Enforce Summonses ("Mot. to Deny & Enforce"), ECF No. 13, filed Aug. 26, 2022. On December 22, 2022, the court transferred sua sponte the four related cases to the undersigned. ECF No. 27. Accordingly, Respondents' request for consolidation is moot and the court terminates the portion of Respondents' motion seeking consolidation.
[3] *See* DUCivR 7-1(g).
[4] Decl. of David Michael Bishop ("Bishop Decl.") ¶ 4, ECF No. 2-3, filed May 20, 2022; Decl. of Revenue Agent Tim Bauer ("Bauer Decl.") ¶ 5, ECF No. 13-1, filed Aug. 26, 2022.
[5] Exec. Summ. Monetized Installment Sale Transactions ("Exec. Summ.") 1, 4, Ex. 1, ECF No. 13-1, filed Aug. 26, 2022.
[6] 26 U.S.C. § 453(b)(1).
[7] *Id.* § 453(c).
[8] Slim Ventures describes "appreciated assets" as including "real estate, mineral rights, water rights, privately held stock, partnership interests, etc." Exec. Summ. 1.
[9] *See id.*
[10] *Id.*

Slim Ventures offers to buy the seller's assets in exchange for an installment note; (2) the seller is offered a "limited-recourse 'monetization loan' from a third-party lender introduced by Slim Ventures"; (3) Slim Ventures resells the asset to the buyer, and the closing on the MIS transaction and the resale closing happens simultaneously; (4) assuming that the seller accepted the loan, the seller would receive the proceeds immediately after closing on the asset's sale.[11] Slim Ventures explains that the strategy allows investors to "re-invest at 95% on a tax deferred basis instead of at 75% by paying the tax" so that investors can "pay with future (inflation eroded) dollars."[12]

The IRS considers MIS transactions as an example of an "abusive tax scheme[]."[13] Around 2021, the IRS identified Slim Ventures and its manager Mr. Bishop as promoters of MIS transactions.[14] Consequently, the IRS began an investigation into Mr. Bishop for possible violations of 26 U.S.C. § 6700 for promoting illegal tax schemes and violations of a permanent injunction.[15] As part of the investigation, the IRS sent Mr. Bishop information and document requests.[16] The IRS avers that he cooperated to some extent, but claims that he did not produce "accounting records, bank statements, [or a] client list."[17] After an interview and further investigation, Agent Bauer found four financial institutions purportedly connected to Slim

---

[11] *Id.*
[12] *Id.* at 6.
[13] *See* Bauer Decl. ¶ 4.
[14] *Id.* ¶ 2.
[15] *Id.* ¶ 6; Final J. of Permanent Inj., ECF No. 6, filed Dec. 5, 2003, *United States v. Bishop*, No. 2:03-cv-01017 (D. Utah, filed Nov 20, 2003). The injunction ordered Mr. Bishop to stop engaging in any activity that would subject him to penalty under § 6700.
[16] Bauer Decl. ¶ 8.
[17] *Id.* ¶ 9; Bishop Decl. ¶ 15.

Ventures and Mr. Bishop: Key Bank, Summit Crest Financial, LLC ("Summit Crest"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Zions Bancorporation NA ("Zions Bank").

On May 7, 2022, the IRS issued eight summons to the four financial institutions under the authority of 26 U.S.C. § 7602(a).[18] Each summons directed the specified bank to produce records relevant to Mr. Bishop's or Slim Venture's income.[19] The IRS notified Petitioners of the summonses by certified mail.[20] Key Bank and Zions Bank responded on May 6 and May 31, respectively.[21] Summit Crest and Wells Fargo have not responded.[22] And the IRS has not referred the cases for grand jury investigation or criminal prosecution.[23]

On May 20 and May 23, 2022, Petitioners filed timely petitions to quash the IRS third-party summonses.[24] All eight petitions are virtually identical.[25] On August 26, 2022, Respondents filed a motion to consolidate and summarily deny the petitions, and a motion to enforce the summonses against Summit Crest and Wells Fargo.[26] Petitioners filed a response on September 28, 2022.[27] Respondents replied on October 24, 2022.[28]

---

[18] *E.g.*, Summons, ECF No. 2-6, filed May 20, 2022. The summons in the seven other cases are identical except for the bank information and the name of the IRS' target (Mr. Bishop or Slim Ventures).
[19] Bauer Decl. ¶ 20.
[20] *Id.* ¶ 19.
[21] *Id.* ¶¶ 23, 24.
[22] *Id.* ¶ 25. While Petitioners claim that Summit Crest has indicated that it has "no information responsive to the two IRS summons served upon it[,]" Pets. Resp. to IRS Mot. ("Resp.") 3 n.2, ECF No. 16, filed Sept. 28, 2022, Respondents assert that the IRS has yet not "receive[d] that same representation in a formal response[,]" Reply to Opp'n ("Reply") 2 n.11, ECF No. 19, filed Oct. 24, 2022.
[23] Bauer Decl. ¶ 26.
[24] *E.g.*, Mot. to Quash. A petitioner has twenty days to move to quash an IRS summons. 26 U.S.C. § 7609(b)(2)(A).
[25] The only differences are the parties' information and the banks' locations. *See, e.g.*, Mot. to Quash ¶¶ 1, 4.
[26] Mot. to Deny & Enforce.
[27] *See* Resp.
[28] *See* Reply.

On December 13, 2022, the court gave notice that it would transfer the related cases to the undersigned and gave the parties one week to object.[29] No party objected. As such, the court transferred the related cases on December 21, 2022.[30]

Petitioners filed a Notice of Additional Cases on December 14, 2022 ("Notice").[31] Respondents then filed a Motion to Strike Petitioners' Surreply on December 16, 2022.[32] Petitioners filed an opposition on December 20, 2022,[33] and Respondents replied on December 27, 2022.[34] Pursuant to local rules, a party may file a notice of supplemental authority when "pertinent and significant authority comes to the attention of a party before the court has entered a decision on a motion."[35] Asking the court to take notice of ten cases, Petitioners claim that Respondents "filed a reply with new caselaw and arguments."[36] But Petitioners "ignore[] the fact that [Respondents' arguments] rebut[] matters [Petitioners] raised in [their] opposition memorandum."[37] Further, Petitioners could have cited the cases in their opposition brief since all ten cases were published before the close of briefing.[38] Given this fact, Petitioners fail to explain why the cases only came to their attention after Respondents' reply brief. Additionally, the Notice provides only generic case summaries; it does not explain adequately why the cases are "pertinent and significant authority." Thus, the court treats the Notice as a surreply. Because

---

[29] ECF No. 23.
[30] ECF No. 27.
[31] ECF No. 24.
[32] ECF No. 25.
[33] ECF No. 26.
[34] ECF No. 28.
[35] DUCivR 7-1(c).
[36] ECF No. 24.
[37] *Simmler v. Reyes*, No. 2:19-cv-01009, 2021 WL 535501, at *1 (D. Utah Feb. 12, 2021), *appeal dismissed*, No. 21-4062, 2021 WL 8323748 (10th Cir. June 2, 2021).
[38] The cases were published between 1970 and 2021. *See* ECF No. 24.

Petitioners have not sought leave to file a surreply,[39] the court grants Respondents' motion to strike.[40]

## STANDARD

The IRS has "broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability.'"[41] "Indeed, the very language of § 7602 reflects . . . a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry."[42] "[T]he IRS's burden . . . is 'slight,' because statutes like 26 U.S.C. § 7602(a) 'must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted.'"[43]

## DISCUSSION

Petitioners seek to quash IRS summonses sent to Key Bank, Summit Crest, Wells Fargo, and Zions Bank. The court first addresses the summonses against Key Bank and Zions Bank.

### I. The Petitions to Quash IRS Summonses as to Key Bank and Zions Bank Are Moot.

Respondents contend that there is no live controversy as to Key Bank and Zions Bank for two reasons. First, the banks informed the IRS that they had no information responsive to the

---

[39] *See* DUCivR 7-1(a)(8).
[40] ECF No. 25.
[41] *Standing Akimbo, LLC v. United States Through Internal Revenue Serv.*, 955 F.3d 1146, 1154 (10th Cir. 2020), *cert. denied sub nom. Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236 (2021), *reh'g denied,* 142 S. Ct. 919 (2021) (quoting *United States v. Clarke*, 573 U.S. 248, 250 (2014)).
[42] *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).
[43] *Speidell v. United States Through Internal Revenue Serv.*, 978 F.3d 731, 738 (10th Cir. 2020), *cert. denied sub nom. Speidell v. United States*, 141 S. Ct. 2800 (2021), *reh'g denied,* 142 S. Ct. 921 (2021) (quoting *Standing Akimbo*, 955 F.3d at 1155).

6

summonses.[44] And second, the IRS confirms that "the[se] summonses will never be enforced or result in any records production."[45]

In response, Petitioners argue that there is a live controversy because the IRS purportedly "indicated to Petitioners' counsel that the IRS reserves the right to reissue new summons toward Key Bank and Zions Bank to target the same two Petitioners in connection with the IRS' present investigation and future investigation(s)."[46] On that basis, Petitioners argue that the "voluntary cessation" and "capable of repetition, yet evading review" mootness exceptions apply.[47]

Petitioners' arguments are unpersuasive. Both banks have responded to the IRS summonses and stated that they have no relevant information. The IRS accepted their responses and declared its intention not to seek enforcement of the summonses. In essence, Petitioners ask the court to preemptively enjoin the IRS from issuing future summonses.[48] The court declines to do so. The banks have responded to the summonses, indicated that they have no relevant information, and the IRS states that it will not enforce the summonses. Even if the IRS were to leave open the possibility of future summonses, there is no live controversy as to Key Bank or Zions Bank at this time.[49]

---

[44] Bauer Decl. ¶¶ 23–24.
[45] Mot. to Deny & Enforce 12.
[46] Resp. 5–6.
[47] *Id.* at 6.
[48] *See id.* ("[T]he IRS has not, and will not, **make any commitment, representation, or stipulation to this Court that the IRS will not assert further summons against the same two banks in reference to the same two Petitioners, notwithstanding an express request from the Petitioners to do so.**").
[49] *Cf. Wilson v. United States*, No. 841247, 1984 WL 15653, at *1 (10th Cir. Aug. 22, 1984) (unpublished) (citing *United States v. Trails End Motel, Inc.*, 657 F. 2d 1169 (10th Cir. 1981)) ("[C]ompliance with the summonses . . . renders all arguments concerning enforcement moot."); *see also Wadsworth v. United States*, No. 1:97 CV 2241, 1998 WL 180913, at *1 n.1 (N.D. Ohio Jan. 22, 1998) ("These claims are moot because [the three banks] have each responded to the Internal Revenue Service that they do not have documents responsive to the summonses." (citation omitted)).

7

The court rejects Petitioners' exception-to-mootness arguments. For the "voluntary cessation" exception, the IRS has not "voluntary[ily] ce[ased] a challenged practice"[50] or stopped an "allegedly wrongful behavior."[51] It has properly executed the summonses by service on Key Bank and Zions Bank pursuant to 26 U.S.C. § 7609(a) and in support of a lawful investigation. The banks then responded to the summonses and the IRS has no intention of enforcing the summonses. Speculation as to future IRS summonses is inappropriate.

Next, the court finds that the "capable of repetition, yet evading review" exception is inapt. "A dispute qualifies for th[is] exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"[52] Petitioners satisfy neither prong. "[A] challenge to the issuance of a summons is not 'too short' to be fully litigated prior to its having any effect on [Petitioners]."[53] Should the IRS reissue a summons, Petitioners may again bring a motion to quash "and the need to comply with the summons could be postponed until the completion of court review, no matter how long it took."[54] In addition, given the IRS' statements, there is only a speculative chance that these specific banks would be subjected to future summonses involving these cases.[55]

---

[50] *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).
[51] *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).
[52] *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (citation omitted).
[53] *Schaeffler v. United States*, No. 13 CIV. 4864, 2016 WL 3369538, at *3 (S.D.N.Y. June 17, 2016), *aff'd*, 696 F. App'x 542 (2d Cir. 2017) (unpublished).
[54] *Id.*; *see United States v. Arthur Anderson & Co.*, 623 F.2d 720, 725 (1st Cir. 1980) (holding that "in the absence of some compelling circumstances that militate in favor of our deciding an otherwise moot case, the 'capable of repetition yet evading review' exception is not available to a litigant aggrieved by a summons or subpoena who could have avoided mootness by refusing to comply").
[55] *See McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013), *aff'd sub nom. McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ("The mootness doctrine therefore requires a federal court to refrain from

For these reasons, the court dismisses as moot the petitions to quash IRS summonses for Key Bank and Zions Bank.[56] The court now turns to the remaining four petitions.

## II. Respondents Have Made a Prima Facie Case that the IRS Properly Issued the Summonses as to Summit Crest and Wells Fargo.

To raise a prima facie case that it has properly issued third-party summonses, the IRS must demonstrate that they have not referred the case for criminal prosecution and that they have issued the summonses in good faith.[57] The court analyzes good faith using the *Powell* factors, which require that the IRS establish (1) that the "investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to the purpose," (3) "that the information sought is not already within the [IRS]'s possession," (4) "and that the administrative steps required by the [IRS] Code have been followed."[58] If the government meets its burden, "generally . . . with an affidavit of the agent who issued the summons[,]" "a 'heavy' burden falls on the taxpayer 'to factually refute the *Powell* showing or factually support an affirmative defense.'"[59] "Because the burden of showing an abuse of the court's process is on the taxpayer, he or she must make a substantial preliminary showing before even limited discovery . . . ."[60]

---

deciding a case if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future" (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000))).

[56] ECF No. 2, No. 2:22-cv-00340; ECF No. 2, No. 2:22-cv-00341; ECF No. 2, No. 2:22-cv-00347; ECF No. 2, No. 2:22-cv-00348.
[57] *Speidell*, 978 F.3d at 738.
[58] *United States v. Powell*, 379 U.S. 48, 57–58 (1964).
[59] *Speidell*, 978 F.3d at 738 (quoting *Standing Akimbo*, 955 F.3d at 1155).
[60] *Id.* (cleaned up).

### A. Criminal Prosecution

Agent Bauer avers that the IRS has not recommended to the Department of Justice a grand jury investigation or criminal prosecution.[61] Petitioners agree that there has been no referral.[62] The IRS has therefore satisfied the first prong.

### B. *Powell* Factors

The second prong involves the *Powell* factors. Petitioners do not contest the fact that the IRS lacks pertinent records from Summit Crest and Wells Fargo based on the banks' inability to locate any relevant documents and Mr. Bishop's refusal to provide any such documents.[63] The third *Powell* factor thus weighs in favor of Respondents. As to the remaining three factors, Petitioners contend that the summonses serve no legitimate purpose, that they are irrelevant, and that the government has failed to observe proper procedural steps.

Under the legitimacy factor, Petitioners claim that the IRS' investigation is disproportionate and an unnecessary burden since they owe nothing or a minimal amount to the IRS.[64] They also argue that the IRS' failure to assert specific evidence of wrongdoing and its pattern of summonses has created the "effect of impermissibly frightening and chilling Petitioner's livelihood and network."[65] For relevancy, Petitioners claim that the IRS has not met its burden to show a nexus between Petitioners and the banks.[66] Petitioners further assert that the IRS summonses are overbroad, and since they have submitted hundreds of pages of documents

---

[61] Bauer Decl. ¶ 26.
[62] Pet. to Quash ¶ 13.
[63] Bauer Decl. ¶ 20.
[64] Pet. to Quash ¶ 7.A, 10; Bishop Decl. ¶ 10.
[65] Pet. to Quash ¶ 7.B, 11.C; Bishop Decl. ¶¶ 12, 17.
[66] Pet. to Quash ¶ 8; Bishop Decl. ¶ 13.

to the government,⁶⁷ the IRS has failed to show why the existing documentation is insufficient.⁶⁸ Last, Petitioners assert that the IRS failed to follow appropriate procedural steps. Citing the tax code, they state that the IRS has failed to give them "sufficient information and notice" to allow them to "respond with the relevant information . . . to maintain their privacy and avoid the potential embarrassment of IRS contact with third parties."⁶⁹ And they argue that the IRS failed to explain its "legitimate, adequate, specific justification of purpose" for the summonses.⁷⁰

Respondents argue that they have met their burden to show legitimacy, relevance, and adherence to proper procedures. First, they contend that the investigation into whether Mr. Bishop is liable for statutory penalties and whether he has violated the court's permanent injunction is a legitimate purpose.⁷¹ Next, they argue that the summonses would help determine Mr. Bishop's potential liability for statutory penalties because the investigation has revealed a nexus between Petitioners and the banks.⁷² As to process, Respondents explain that they have met all required steps: serving the banks by certified mail, giving Petitioners timely notice, and ensuring that Mr. Bishop had not been referred for a criminal investigation.⁷³

The court finds that Respondents have met their burden to show relevancy and legitimacy. Determining whether an individual has promoted false tax schemes can be a legitimate purpose.⁷⁴ Agent Bauer sought information to "shed light on the implementation and

---

⁶⁷ Pet. to Quash ¶ 11.E; Bishop Decl. ¶ 15.
⁶⁸ Pet. to Quash ¶ 9, 11.D; Bishop Decl. ¶ 14.
⁶⁹ Pet. to Quash ¶ 12.
⁷⁰ *Id.*
⁷¹ Mot. to Deny & Enforce 13.
⁷² *Id.* at 14–15.
⁷³ *Id.* at 15.
⁷⁴ *See, e.g.*, *S. Crow Collateral Corp. v. United States*, No. 1:17-mc-09828, 2018 WL 2454630, at *4 (D. Idaho Jan. 19, 2018), *R. & R. adopted,* No. 1:17-mc-09828, 2018 WL 2454628 (D. Idaho Apr. 10, 2018), *aff'd*, 782 F. App'x 597 (9th Cir. 2019) (unpublished).

details of [Mr.] Bishop's MIS transactions," whether he would be liable for penalties under § 6700, the amount he was liable for, and whether he had violated the permanent injunction.[75]

Agent Bauer also sought information from the financial institutions because Mr. Bishop or Slim Ventures "held ownership interests, signatory authority, or right to make withdraw from, or for which they were" a fiduciary.[76] The IRS investigation indicated that Summit Crest and Wells Fargo were connected with Mr. Bishop and Slim Ventures through lending and other banking services.[77] Indeed, Agent Bauer discovered that Mr. Bishop uses Summit Crest as Slim Venture's third-party lender and that Wells Fargo paid Slim Ventures $11,227 in interest during 2020.[78] Mr. Bishop also informed Agent Bauer that he had been averaging three to four MIS sales per month since 2018.[79] Taken together, these facts show that the summonses met the threshold of "*potential* relevance to an ongoing investigation."[80]

Finally, Respondents have shown that they followed proper procedures when they issued the summonses. The IRS complied with 26 U.S.C. § 7601 *et seq.* by serving Summit Crest and Wells Fargo with certified mail that was received on May 7, 2022,[81] sending Petitioners timely notice of the served summons,[82] and verifying that Mr. Bishop had not been referred for a grand jury investigation or criminal prosecution.[83]

---

[75] Bauer Decl. ¶ 21.
[76] *Id.* ¶ 16.
[77] *Id.* ¶ 13–14.
[78] *Id.* "Such a large amount of ordinary bank interest indicates that Slim Ventures likely held a substantial sum of money with Wells Fargo in 2020." *Id.*
[79] *Id.* ¶ 12.
[80] *Standing Akimbo*, 955 F.3d at 1160; *see also Arthur Young & Co.*, 465 U.S. at 814.
[81] Bauer Decl. ¶ 17.
[82] *Id.* ¶ 19.
[83] *Id.* ¶ 26.

Petitioners contend that the IRS failed to give them the opportunity to provide the necessary documents before sending the third-party summons.[84] Yet simply citing cases for general statements of law is not enough to show that notice was insufficient for purposes of the *Powell* factors. To the extent that Petitioners argue that the IRS' actions were insufficient notice under § 7602(c),[85] the court need not address this question here. Because the IRS adhered to the prescribed procedures under § 7609(a), the IRS has made a prima facie showing.

In sum, the IRS has not referred the case for criminal investigation or prosecution, the summonses serve a legitimate purpose, they are relevant, and the IRS has observed proper process.[86] The court therefore finds that Respondents have made a prima facie showing of good faith.

### III. Petitioners Have Not Met Their Burden to Refute the Government's Prima Facie Showing of Good Faith.

"To defeat the government's prima facie case, 'it is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice.'"[87] Petitioners attempt to do so by focusing on the first two *Powell* factors: legitimacy and relevance.

#### A. Legitimacy

Petitioners argue that the IRS began its investigation to chill their expressive view that MIS transactions are legal. In support, they assert that customers and business partners are

---

[84] Pet. to Quash ¶ 12 (citing *J.B. v. United States*, 916 F.3d 1161, 1172–73 (9th Cir. 2019) (addressing whether notice to the taxpayer was reasonable advance notice under 26 U.S.C. § 7602(c)(1))).
[85] *See id.*
[86] *See United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985).
[87] *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1444).

13

frightened away by the IRS investigation, which creates "considerable and unfair negative economic, business, and legal consequences."[88] But evidence of an alleged adverse effect from an investigation is not evidence of improper intent. "That [loss of customers] might be the effect, rather than the purpose, of the investigation is of no consequence."[89] The claim that unnamed persons have been scared off is both conclusory and not material.

Relatedly, Petitioners claim that the absence of relevant documents from Key Bank and Zions Bank indicate that the IRS summonses as a whole are "demonstrably meritless."[90] Yet the investigation into Petitioners began only in 2021,[91] and the IRS has not yet received documents from Summit Crest or Wells Fargo. The IRS "can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized."[92]

Next, Petitioners argue that because MIS transactions are permissible, the IRS' investigation violates the First Amendment by attempting to chill their expressive speech.[93] They contend that the IRS has failed to connect the dots "between any purportedly forbidden scheme(s) and any specific language in any statute or case precedent."[94] Thus, "if the IRS cannot demonstrate that the various variants of MIS are actually illegal, . . . the IRS cannot invoke such a theory as a valid basis . . . for the IRS summons, and . . . the summons [are] invalid."[95]

Petitioners' argument fails because they do not offer support for the proposition that the IRS must prove the illegality of MIS transactions before beginning its investigation. Indeed,

---

[88] Bishop Decl. ¶¶ 12, 15, 17.
[89] *La Mura v. United States*, 765 F.2d 974, 981 (11th Cir. 1985).
[90] Resp. 4.
[91] Bauer Decl. ¶ 5.
[92] *Arthur Young & Co.*, 465 U.S. at 814.
[93] *See* Resp. 9–14; Bishop Decl. ¶¶ 9, 12, 17.
[94] Resp. 12.
[95] *Id.* at 15.

courts have rejected the notion that the IRS must show probable cause to open investigations.[96] The IRS need not prove that promoting MIS transactions incurs § 6700 penalties before issuing summonses. Indeed, the IRS must only show "that it has a realistic expectation rather than an idle hope that something might be discovered."[97] Additionally, "[t]he fact that Petitioners proffer a factual and legal defense does not transmute an investigation, ipso facto, into an illegitimate exercise based on the IRS' declining to adopt the defense without further investigation."[98] In short, Petitioners' arguments amount to preemptive defenses as to their ultimate liability and do not rebut the government's showing of good faith.

Further, Petitioners rely on an expansive First Amendment argument to assert an improper purpose for the summonses. They claim that the IRS has deployed "governmental enforcement, threat of enforcement, auditing, and harassment of the Petitioners and their business network in an effort to curtail, suppress, and retaliate against discussion of First Amendment topics about disputed matters of public concern . . . that the Government disfavors."[99] Specifically, Petitioners contend that the IRS' investigation into MIS transactions—despite not proving the transactions' illegality—chills their expressive rights.

---

[96] *See United States v. Kaiser*, 308 F. Supp. 2d 946, 955 (E.D. Mo. 2004), *aff'd*, 397 F.3d 641 (8th Cir. 2005) ("*Powell* explicitly rejected the notion that the Internal Revenue Service was required to demonstrate the existence of probable cause for its investigations which used the broad summons power given to the IRS by section 7602 of the Internal Revenue Code."); *S. Crow Collateral*, 2018 WL 24554630, at *5 (prima facie showing of good cause because the information sought "may shed light" on "the implementation and details of the installment sale transactions" as to whether the taxpayer may be subject to penalties).
[97] *La Mura*, 765 F.2d at 981 (cleaned up).
[98] *S Crow Collateral*, 2018 WL 24554630, at *5.
[99] Resp. 16; *see* Bishop Decl. ¶¶ 12, 15, 17. Petitioners also accuse the Biden Administration of a pattern of using investigation and threat of investigation to suppress disfavored ideas and theories. *See* Resp. 16–17 nn.28–29.

Petitioners' "assertion[s] are pure conjecture."[100] They merely reprise the argument that the IRS has not proven that MIS transactions are unlawful and so the investigation chills their speech. But this is a premature and unsupported claim. Thus, Petitioners fail to show an illegitimate purpose for the summonses.

### B. Relevancy

Petitioners also argue that the IRS has not met its burden to show relevancy because it has not proven a nexus between Petitioners' actions and the summonses.[101] They maintain that the summonses are irrelevant, "overbroad fishing expeditions[,]"[102] and that the IRS cannot engage in "*carte blanche* discovery" to uncover some evidence of wrongdoing.[103] Citing the tax code, Petitioners contend that the IRS has failed to "*assert*[] that there is a reasonable indication that there is a likelihood of unreported income on the part of the Petitioners."[104] They liken the IRS' investigation to a general warrant "without any practical guardrails or limitations."[105]

The court has previously explained that Respondents have met their burden to show that the summonses to Summit Crest and Wells Fargo are relevant and proportional. In opposition, Petitioners state merely that they have submitted hundreds of pages of documents to the IRS.[106] Otherwise, they offer boilerplate statements of law and conclusory claims. At the summons

---

[100] *United States v. Greenberger*, No. 1:15-CV-03532, 2016 WL 3912065, at *11 (N.D. Ga. Jan. 11, 2016), *R. & R. adopted,* No. 1:15-CV-3532, 2016 WL 3912060 (N.D. Ga. June 21, 2016). In *Greenberger*, the taxpayer asserted that the IRS investigation was improper because it had the effect of chilling him from exercising free speech. *Id.* The court soundly rejected the taxpayer's claims because the taxpayer offered "no basis for concluding that the IRS [wa]s conducting the investigation for the purpose of chilling any rights." *Id.* Here, Petitioners likewise fail to show that the IRS pursued its investigation to chill their expressive rights.
[101] Resp. 19–20 (citing *United States v. Goldman*, 637 F.2d 664, 667–68 (9th Cir. 1980)); Bishop Decl. ¶ 13.
[102] *Id.* at 19.
[103] *Id.* at 20–21 (quoting *United States v. Coopers & Lybrand*, 550 F.2d 615, 619 (10th Cir. 1977)).
[104] *Id.* at 19 n.31.
[105] *Id.*; *see* Bishop Decl. ¶ 11.
[106] Bishop Decl. ¶ 15.

stage, the burden is squarely on the taxpayer to rebut the government's prima facie showing of good faith with "plausible inference[s] of improper motive."[107] "Bare assertion[s] or conjecture," as Petitioners offer here, are not enough.[108] For that reason, they have not overcome the government's low burden to show that material retrieved from Summit Crest and Wells Fargo "might throw light on the correctness of" Petitioners' tax liability.[109]

### IV. Petitioners' Requests for an Evidentiary Hearing and *in camera* Review Are Denied.

The court addresses two other matters: Petitioners' request for an evidentiary hearing and *in camera* review. First, Petitioners request an evidentiary hearing to question Agent Bauer because they have purportedly "raised an inference of bad faith."[110] However, Petitioners fail to "point to specific facts or circumstances plausibly raising an inference of bad faith."[111] Thus, they are not entitled to an evidentiary hearing. Second, Petitioners ask that the court conduct an *in camera* review of documents submitted by the financial institutions before their release to the IRS. They argue that such a review is needed to ensure that the documents are narrowly tailored to what is reasonable and proportionate, and not unduly broad, burdensome, or vague.[112] Though "[a] district court has broad discretion in deciding whether or not to grant an *in camera* review,"[113] "an *in camera* review should not be resorted to as a matter of course, simply on the

---

[107] *Clarke*, 573 U.S. at 254.
[108] *Id.*
[109] *United States v. Sw. Bank & Tr. Co.*, 693 F.2d 994, 996 (10th Cir. 1982) (citation omitted).
[110] Resp. 18; Pet. to Quash 11.
[111] *Clarke*, 573 U.S. at 254.
[112] Pet. to Quash 12; Resp. 21.
[113] *Rifle Remedies, LLC v. Internal Revenue Serv.*, No. 18-cv-00949, 2021 WL 981317, at *12 (D. Colo. Mar. 16, 2021) (citing *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)).

theory that it can't hurt."[114] Finding no basis for an *in camera* review, the court denies the request.[115]

### V. The Court Grants Respondents' Motion to Enforce the Summonses for Summit Crest and Wells Fargo.

Respondents seek a court order enforcing the summonses against Summit Crest and Wells Fargo in light of the financial institutions' failure to respond.[116] "In [a proceeding to quash], the [IRS] may seek to compel compliance with the summons."[117] Given that the banks have not yet responded to the IRS, the court orders the enforcement of the summonses against Summit Crest and Wells Fargo.

### ORDER

Accordingly, the court GRANTS Respondents' Motion to (1) Summarily Deny Petitions to Quash IRS Summonses and (2) Enforce the Summonses,[118] and DENIES the Petitions to Quash IRS Summonses:

> 1. As to Key Bank and Zions Bank, the court GRANTS Respondents' Motion to Deny Petitions to Quash IRS Summonses and DENIES as moot the associated Petitions to Quash IRS Summonses.[119]

---

[114] *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d 1174, 1178 (10th Cir. 2011) (cleaned up).
[115] *See MVT Servs., LLC v. Great W. Cas. Co.*, No. 2:18-cv-01128, 2021 WL 1227729, at *5 (D.N.M. Apr. 1, 2021) ("[T]he Court cannot issue a hypothetical or advisory opinion.").
[116] Bauer Decl. ¶ 25.
[117] 26 U.S.C. § 7609(b)(2)(A).
[118] ECF No. 13.
[119] ECF No. 2, No. 2:22-cv-00340; ECF No. 2, No. 2:22-cv-00341; ECF No. 2, No. 2:22-cv-00347; ECF No. 2, No. 2:22-cv-00348.

2. As to Summit Crest and Wells Fargo, the court GRANTS Respondents' Motion to Deny Petitions to Quash IRS Summonses and DENIES the associated Petitions to Quash IRS Summonses.[120]

3. The court GRANTS Respondents' Motion to Enforce the Summonses against Summit Crest and Wells Fargo. The two financial institutions are ORDERED to respond to the summons within 30 days of this Memorandum Decision and Order.

Signed January 9, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[120] ECF No. 2, No. 2:22-cv-00344; ECF No. 2, No. 2:22-cv-00345; ECF No. 2, No. 2:22-cv-351; ECF No. 2, No. 2:22-cv-352.